IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–01015–WYD–KMT

WYATT T. HANDY, JR.,

     Plaintiff,

v.

CITY OF SHERIDAN,
DET. KRISTINE BRYANT, Individual & Official, and
OFF. MIKE MONTOYA, Individual & Official,

     Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**Magistrate Judge Kathleen M. Tafoya**

     This case comes before the court on the "Sheridan Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Doc. No. 19, filed June 7, 2012) and Plaintiff's "Motion to Amend Complaint" (Doc. No. 60, filed Nov. 7, 2012). For the following reasons, the court recommends that Defendants' Motion to Dismiss and Plaintiff's Motion to Amend both be granted in and denied in part.

**FACTUAL BACKGROUND**

     The following factual background is derived from Plaintiff's Prisoner Complaint (Doc. No. 1, filed Apr. 16, 2012), as well as the parties' submissions with respect to this Recommendation.

On January 19, 2010, Plaintiff's ex-wife,[1] Lacy Jo Smith, "ran" into the Sheridan, Colorado, Police Department ("SPD") and contacted Defendant Kristine Bryant, a detective with SPD. (Compl. at 3, ¶ 1.) Ms. Smith told Detective Bryant that Plaintiff had chased her around the City of Sheridan at speeds ranging from 35-55 miles per hour, and that Plaintiff rammed her car twice. (*Id.,* ¶ 2.) Ms. Smith told Defendant Bryant that the second alleged "ramming" was of sufficient force to knock her car from a stopped position at a red light into the middle of the intersection—or approximately 19 feet. (*Id.*) Ms. Smith further told Defendant Bryant that, at the time of the rammings, her two children and an individual named James Burks were also in her car. (*Id.*)

Detective Bryant went outside to look at Ms. Smith's car and noticed "minor" damage to the back left side of her car, including a broken tail light. (*Id.* at 4, ¶ 3.) Plaintiff alleges that there was no damage to his car. (*Id.*)

Plaintiff maintains that, "based on [Defendant] Bryant's experience as a level 2 accident reconstructionist [sic]," she should have recognized that the damage to Ms. Smith's car was "more consistent with an accident at a low rate of speed and not two intentional and violent rammings." (*Id.* ¶ 4.) Plaintiff further alleges that Defendant Bryant failed to prepare a supplemental report of her initial contact with Ms. Smith; failed to have tests, "such as measurements, etc. for reconstruction purposes," conducted on Ms. Smith's car; failed to go or

---

[1] Although Plaintiff's Complaint refers to Ms. Smith as his "wife" (Compl. ¶ 3), Plaintiff's subsequently-filed proposed Amended Complaint (Doc. No. 60-1) refers to Ms. Smith as his " former wife." (Doc. No. 60-1 ¶ 1.) As such, the court refers to Ms. Smith as Plaintiff's ex-wife.

send an officer to the scene of the two alleged rammings to obtain potential evidence; and failed

to contact the former owner of Ms. Smith's car to determine if the minor damage to the rear end

of the car was present when the vehicle was sold to Ms. Smith two weeks earlier.  (*Id.*¶ 5.)

Defendant Bryant directed Defendant Montoya, an officer with SPD, to commence an

initial investigation of this incident.  (*Id.*¶ 6.)  Plaintiff maintains that, based on Defendant

Montoya's experience as "a level 2 accident reconstructionist [sic]," he also should have realized

that the minor damage to Ms. Smith's car was not consistent with two violent rammings.  (*Id.* ¶

8)  Plaintiff also alleges that, much like Defendant Bryant, Defendant Montoya failed to conduct

tests on Ms. Smith's car; failed to go or send an officer to the scene of the alleged rammings to

obtain potential evidence; and failed to contact the former owner of the vehicle.  (*Id.* at  4-5, ¶ 9.)

On or about January 25, 2010, Defendant Bryant allegedly interviewed an eyewitness to

at least one of the ramming incidents, Andrew Glaviano.  (*Id.* at 5, ¶ 11.)  Plaintiff maintains that

Mr. Glaviano's account of the incident contradicted that of Ms. Smith and Mr. Burks.  (*Id.*)

Plaintiff further maintains that Defendant Bryant "had three (3) witnesses, who all claimed to be

involved in or witness[es to] the alleged crime, with different stories."  (*Id.*)

On or about February 1, 2010, Ms. Smith again contacted Defendant Bryant to informed

her that her pregnancy was terminated as a result of the alleged rammings.  (*Id.* ¶ 20.)  Plaintiff

maintains that "he did not unlawfully terminate [Ms. Smith's pregnancy], she had an abortion."

(April 5, 2012 Declaration of Wyatt Handy, Doc. No. 1-1, ¶ 7 [4/5/2012 Handy Decl.].)  Plaintiff

alleges that Defendant Bryant submitted a report of Ms. Smith's statement, even though she

knew it was false.  (*Id.*)

That same day, February 1, 2010, Defendant Bryant submitted an affidavit for a warrant for Plaintiff's arrest on four counts of second-degree attempted murder and "various other felonies." (*Id.* ¶ 10; Doc. No. 25, Resp. Mot. Dismiss, Ex. 1 at 3.) Plaintiff maintains that, in that affidavit, Defendant Bryant "misrepresented the facts by asserting false statements and omitting [other] material facts." (Compl. at 5.) A felony complaint was filed against Plaintiff that same day. (Resp. Mot. Dismiss, Ex. 1 at 3.) Plaintiff was arrested on February 12, 2010.[2] (*Id.*)

On May 28, 2010, Defendant Bryant initiated criminal charges against Plaintiff for allegedly violating a protection order entered in Plaintiff's underlying criminal case. (Resp. Mot. Dismiss, Ex. 2 at 2; *see also* Compl. at 6, ¶ 20.) Defendant Bryant allegedly submitted a affidavit that intentionally included false statements and omitted other material facts. (*Id.* ¶ 21.) More specifically, Defendant Bryant asserted that Plaintiff violated the protection order by contacting his wife in February and March 2010. (*Id.* ¶ 22.) However, Plaintiff maintains that he could not have possibly violated the protection order on those dates, because the order was not issued until April 23, 2010. (*Id.* ¶ 23.) Plaintiff maintains that Defendant Bryant knew that Plaintiff made contact with his ex-wife prior to the date the protection order was entered. (*Id.* )

---

[2] At the time of his "arrest," however, Plaintiff was in the custody of the Denver Police Department. (Resp. Mot. Dismiss, Ex. 1 at 3.) As such, the District Attorney sought a Writ of Habeas Corpus to transport Plaintiff from DPD custody to SPD. (*Id.* at 4.) Plaintiff ultimately made his initial appearance on the charges for second degree attempted murder on April 21, 2010. (*Id.* at 4.)

On June 16, 2010, a preliminary hearing was held with respect to the second-degree attempted murder charges.  Plaintiff alleges that, during that hearing, Defendant Bryant testified falsely and misrepresented facts—ostensibly about the severity of the rammings of Ms. Smith's car—for the purpose of deceiving the judge to find probable cause to support filing charges against Plaintiff. (Compl. at 5,¶ 13.)

Plaintiff maintains that, some time prior to February 2011, "the [second-degree] attempted murder charges [were] increased to [first-degree] attempted extreme indifference murder."[3] (*Id.* ¶ 14.)  However, it appears that the charges were not formally increased to first-degree attempted murder until June 16, 2011.  (Resp. Mot. Dismiss, Ex. 1 at 22.)  On that day, the state court judge held a preliminary hearing and found that there was probable cause to support amending the felony complaint to include first-degree extreme indifference attempted murder.  (*Id.*)  Plaintiff alleges that, at that June 16, 2011 preliminary hearing, Defendants Bryant and Montoya testified falsely and misrepresented facts—ostensible regarding the severity of the rammings—for the purpose of deceiving the judge to find probable cause supported the first-degree murder charges.  (Compl. at 5, ¶ 14.)

The state court judge subsequently appointed a level 4 accident reconstruction expert to investigate on behalf of Plaintiff.  (*Id.* at 5-6, ¶ 15.)  Plaintiff's criminal trial commenced on August 16, 2011.  (*Id.* at 6, ¶ 16.)  Plaintiff's accident reconstruction expert allegedly concluded—presumably during his trial testimony—that the damage to Ms. Smith's car was not

---

[3] It is unclear if the charges were increased to first-degree murder in February 2011, or sometime prior to that date.  (*See id.*)

consistent with a "violent ramming or pushing." (*Id.* at 5-6, ¶ 15.)  Plaintiff also maintains that

the expert concluded that experienced police officers with accident reconstruction training, such

as Defendants Bryant and Montoya, should have known that the minor damage to Ms. Smith's

car was inconsistent with a violent ramming.  (*Id.*)

Plaintiff was acquitted of the first-degree attempted murder charges, and "all other felony

counts," on August 18, 2011.  (*Id.* at 6, ¶ 17) In total, Plaintiff was incarcerated pretrial on these

charges for 18 months.  (*Id.* ¶ 18.)

Plaintiff was arrested on the May 28, 2010 protection order violation charges on

August 18, 2011—the date of Plaintiff's acquittal in his criminal case.  (Resp. Mot. Dismiss, Ex.

2 at 2.)  Due to the charges for violating the protection order, Plaintiff was still held in custody

after he was acquitted on the attempted murder charges.  (Compl. at 6-7,¶ 25.)

Plaintiff was arraigned on the charges for violating the protection order on August 19,

2011 (*Id.* at 7, ¶ 26; *see also* Resp. Mot. Dismiss, Ex. 2 at 2), and released on bond on August

20, 2011 (Compl. at 7, ¶ 27).  On December 7, 2011, the charges for violating the protection

order were dismissed.  (Compl. at 7, ¶ 28.)

## PROCEDURAL HISTORY

Plaintiff's Prisoner Complaint was filed on April 16, 2012.  (*See* Compl.)  Plaintiff

asserts eleven claims for relief pursuant to 42 U.S.C. § 1983 for violations of his constitutional

rights, as well as five state law tort claims.  (*See id.*)

Defendants Motion to Dismiss was filed on June 6, 2012.  (*See* Mot. Dismiss.)

"Plaintiff's Response and Objection to Defendants [sic] Motion to Dismiss" was filed on July 3,

2012 (Doc. No. 25 [Resp. Mot. Dismiss]), and Defendants filed a reply on July 18, 2012 (Doc.

No. 30 [Reply Mot. Dismiss]).

Plaintiff filed his Motion to Amend on November 7, 2012.  (*See* Mot. Am.)  Defendants

file their Response to Plaintiff's Motion to Amend on November 28, 2012.  (Doc. No. 72 [Resp.

Mot. Am.].)  Pursuant to D.C.COLO.LCivR 7.1C and Fed. R. Civ. P. 6(d), Plaintiff had until

December 15, 2012 to file a reply.  No reply was filed by or at any time after that date.

Accordingly, these motions are ripe for the court's review and recommendation.

## LEGAL STANDARDS

### A.      Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct.

897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.

1997) (a court may not "supply additional factual allegations to round out a plaintiff's

complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may

not "construct arguments or theories for the plaintiff in the absence of any discussion of those

issues").

### B. Lack of Subject Matter Jurisdiction

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for lack of subject

matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment

on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks

authority to adjudicate the matter, attacking the existence of jurisdiction rather than the

allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)

(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction

when specifically authorized to do so). The burden of establishing subject matter jurisdiction is

on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings

in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The

dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir.

2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that

dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice

is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v.

Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one

for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations ... [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*

### C.    *Amendment of Pleadings*

Pursuant to Fed. R. Civ. P. 15(a), "[t]he court should freely give leave [to amend

the pleadings] when justice so requires."  *See also York v. Cherry Creek Sch. Dist. No. 5,*  232

F.R.D. 648, 649 (D. Colo. 2005); *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley

Hosp. Dist.,* 353 F.3d 832, 842 (10th Cir. 2003). The Supreme Court has explained the

circumstances under which denial of leave to amend is appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the
> merits. In the absence of any apparent or declared reason-such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the opposing
> party by virtue of allowance of the amendment, futility of amendment, etc.-the
> leave sought should, as the rules require, be "freely given." Of course, the grant or
> denial of an opportunity to amend is within the discretion of the District Court,
> but outright refusal to grant the leave without any justifying reason appearing for
> the denial is not an exercise of discretion; it is merely abuse of that discretion and
> inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  *See also Triplett v. LeFlore County, Okl.*, 712 F.2d

444, 446 (10th Cir.1983).   Further, the Supreme Court guides that

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson,* 355 U.S. 41, 48 (1957).

## ANALYSIS

The court first addresses Defendants' Motion to Dismiss.  The court then turns to Plaintiff's Motion to Amend.

## I.  *MOTION TO DISMISS*

Defendants' Motion to Dismiss argues that Plaintiff's state law tort claims—claims six, eleven, twelve, fourteen, and fifteen—should be dismissed.  It does not argue that Plaintiff's remaining § 1983 claims are properly dismissed.

### A.  *Immunity Under the Colorado Governmental Immunity Act*

Defendants first argue that the Colorado Governmental Immunity Act (CGIA) does not waive sovereign immunity for the conduct at issue in Plaintiff's state law tort claims.  The court agrees with this argument to the extent that it is directed at Plaintiff's state law claims against Defendants Bryant and Montoya in their official capacities.

#### 1.  *Individual-Capacity Claims*

A public entity or employee is immune from all claims that lie or could lie in tort, "unless the claim falls within one of the six limited areas for which immunity has been waived or unless the act or omission causing the injury was willful and wanton."  *Moody v. Ungerer,* 885 P.2d 200, 204 (Colo. 1994) (citing Colo. Rev. Stat. 24-10-188(2)); *see also A.A. ex rel. Archuletta v. Martinez,* Case No. 12-cv-00732-WYD-KMT, 2012 WL 5869158, at *14 (D. Colo. Nov. 19,

2012).  The six limited areas for which immunity has been explicitly waived are found at Section 10-24-106 of the Colorado Revised Statutes.

Plaintiff does not argue that Defendants' conduct falls within any of the six § 10-24-106 categories for which sovereign immunity has been explicitly waived.  (*See* Resp. Mot. Dismiss at 7-9.)  Rather, he maintains that Defendants' conduct was willful and wanton.

Defendants do not argue, at least at this juncture, against Plaintiffs' willful and wanton conduct argument.  (Reply Mot. Dismiss at 4-5.)  Further, although Plaintiff's Complaint does not explicitly allege "willful and wanton" conduct, the court finds that Defendants' alleged conduct, if proven to be true, could rise to the level of willful and wanton.  *See Wilson v. Meyer,* 126 P.3d 276, 282 (Colo. App. 2005) (finding that a plaintiff does not necessarily need to specifically allege "willful and wanton" conduct).  Therefore, because Plaintiff has sufficiently alleged willful and wanton conduct, Defendants Bryant and Montoya are not facially immune from Plaintiff's individual capacity state-law tort claims.

### 2.     *Official-Capacity Claims*

Plaintiff's state-law tort claims do not specify whether they are directed at Defendants Bryant and Montoya in their individual capacities, official capacities, or both.  Because the caption of Plaintiff's Complaint names them in both their individual and official capacities (Compl. at 1), the court must presume that Plaintiff's state law tort claims target Defendants Bryant and Montoya in *both* their individual and official capacities.

By naming Defendants in their official capacity, Plaintiff has effectively named the government entity of which these defendants are agents, the City of Sheridan.  *Kentucky v.*

11

*Graham,* 473 U.S. 159, 167 (1995) (quoting *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690 n.55)) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'")  "If the conduct does not fall within one of the . . . § 24-10-106 waiver categories, a public entity cannot be deemed to have waived sovereign immunity by virtue of its *own* willful and wanton conduct." *Carothers v. Archuleta Cnty. Sheriff,* 159 P.3d 647, 650 (Colo. App. 2006) (emphasis added); *see also A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.,* 831 F. Supp. 2d 1226, 1259 (D. Colo. 2011). "Further, a public entity is not liable for the willful and wanton conduct of its employees unless the conduct falls within one of the waiver provisions of § 24-10-106." *Carothers,* 159 P.3d at 650;(citing *Ramos v. City of Pueblo,* 28 P.3d 979 (Colo. App. 2001)); *see also Middleton v. Hartman,* 45 P.3d 721, 728 (Colo. 2002).

As stated above, none of the conduct at issue here falls within one of the categories of conduct set forth in § 24-10-106.  Therefore, because a public entity cannot be held liable for either its own willful and wanton conduct or that of its employees, Plaintiff's state-law tort claims are barred under the CGIA to the extent that the are directed at Defendants Bryant and Montoya in their official capacities.

**B.      *Notice Pursuant to Section 24-10-109 of the CGIA***

Defendants argue that they are also entitled to immunity under CGIA from Plaintiff's individual capacity state law tort claims because Plaintiff failed to timely submit notice of his claims to the City of Sheridan Attorney's Office, as required by Section 24-10-109 of the Colorado Revised Statutes.  (Mot. Dismiss at 3-5.)

12

Section 24-10-109(1) provides:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred and eighty-two days after the date of discovery of the injury, regardless of whether the person then knew all the elements of a claim or of a cause of action for such injury.  Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

Colo. Rev. Stat. § 24-10-109(1).

Compliance with the notice provision implicates the court's subject-matter jurisdiction. *Id.*; *City and County of Denver v. Crandall*, 161 P.3d 627, 634 (Colo. 2007) (stating that "[t]he CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply with it is an absolute bar to suit").  *See also Trinity Broadcasting of Denver, Inc., v. City of Westminster*, 848 P.2d 916, 924 (Colo. 1993).  The burden is on the plaintiff to "demonstrat[e] that notice was properly filed so that the suit may proceed."  *Finnie v. Jefferson Cnty. Sch. Dist.*, 79 P.3d 1253, 1261 (Colo. 2003).[4]  Even if the injuries suffered by the plaintiff are the result of interrelated conduct or actions, the Colorado Supreme Court has held that "the judicially-constructed continuing violation doctrine cannot be used to remedy an untimely filing under the CGIA."  *Gallagher v.*

---

[4] Defendants have not argued that the substance of Plaintiff's notice is inadequate or that it was not filed with the proper entity.  These issues require only "substantial compliance," or a "a good faith effort to include, as far as is reasonably possible, the required information."  *See Bennett v. Mahan,* Case No. 11-cv-01824-MSK-KMT, 2012 WL 4127307, at *2 (D. Colo Sept. 19, 2012) (citing *Finnie,* 79 P.3d at 1255-56; *Awad v. Breeze,* 129 P.3d 1039, 1041 (Colo. App. 2005)).

*Bd. of Trustees,* 54 P.3d 386, 393 (Colo. 2002).  Therefore, if any action alleged by the plaintiff

occurs outside the 182-day limit, those acts will be barred from his claim.  *Id.*

 Plaintiff's sixth claim and eleventh claims allege state-law malicious prosecution against

Defendants Bryant and Montoya, and Plaintiff's thirteenth claim alleges a state-law false arrest

and false imprisonment. (Compl. at 10, 13.)  State law "[c]laims for malicious prosecution

accrue for purposes of filing a notice under the [C]GIA when claimants are aware that allegedly

improper charges have been filed against them." *Masters v. Castrodale,* 121 P.3d 363 (Colo.

App. 2005) (citing *Carroll v. Reg'l Transp. Dist.,* 638 P.2d 816, 365 (Colo. App. 1981).

Similarly, a claim for false arrest or false imprisonment accrues for purposes of filing a notice at

the time of the plaintiff's arrest. *Id.*  In addition, Plaintiff's fourteenth and fifteenth claims allege

gross negligence and intentional infliction of emotional distress based on Defendants' "filing of

false criminal charges against [him]." (Compl. at 14, ¶ 68, 70.)  As such, these claims also

accrued at the time that Plaintiff learned of the charges against him.

 The court finds that, Plaintiff's state law claims are barred by the CGIA to the extent that

they relate to Plaintiff's initial arrest in 2010 and the filing of the charges of attempted second-

degree murder.  The second-degree attempted murder charges were filed on February 1, 2010,

and Plaintiff was arrested on those charges on February 12, 2010.  (Resp., Ex. 1 at 3.)  Plaintiff

made his initial appearance on the arrest warrant on April 21, 2010, at which time he was

undoubtedly made aware of the second-degree murder charges against him.  (*Id.*at 4.)  However,

Plaintiff did not file notice with the Sheridan City Attorney's Office pursuant to the CGIA until

July 7, 2011.  (Resp., Ex. 4; *see also* Mot. Dismiss, Ex. A, Affidavit of Arlene Sagee; Ex. B,

Affidavit of William P. Hayashi.)  As such, because Plaintiff's notice was filed more than 182 days after his claims accrued, the notice is untimely with respect to his initial arrest and the second-degree murder charges.

The court also finds that Plaintiff's false arrest/false imprisonment claim is barred to the extent that it relates to his arrest on the protection order violation charges.  Plaintiff arrest for these charges occurred on August 18, 2011, after he was acquitted in the underlying criminal case. However, as discussed above, Plaintiff's notice was filed on July 7, 2011, approximately five weeks *prior* to that arrest.  Therefore, as a practical matter, that notice cannot relate to his arrest on August 18, 2011.

However, the court finds that Plaintiff's claims are not barred to the extent that they relate to (1) the *charge* for violating the protection order and (2) the first-degree attempted murder charges.  Plaintiff first learned of the first-degree attempted murder charges at the preliminary hearing held on June 16, 2011, when the state court found probable cause to amend the charges against Plaintiff to first-degree extreme indifference attempted murder.  (Resp., Ex. 1 at 22.)  Plaintiff also first learned of the protection order violation charge on June 16, 2011. Although this charge was initially filed on May 28, 2010, Plaintiff states that he first learned of this charge on June 16, 2011 from a bailiff or court service deputy while he was being transported back to the detention facility from the preliminary hearing.  (Resp. Mot. Dismiss, Ex. 3, June 22, 2012 Declaration of Wyatt Handy ¶ 2 [6/22/2012 Handy Decl.].)  Plaintiff's notice was filed with the Sheridan City Attorney's Office on July 27, 2011—21 days after he first learned of the first-degree attempted murder and protection order violation charges.  Therefore,

the notice was timely with respect to the first-degree attempted murder and protection order violation charges.

Accordingly, the court finds that Plaintiff's thirteenth claim for false arrest/false imprisonment is barred in its entirety under the CGIA.  The court further finds that Plaintiff's sixth, eleventh, fourteenth, and fifteenth claims are barred to the extent that they relate to the second-degree attempted murder charges against Plaintiff.  However, the court finds that Plaintiff's sixth, eleventh, fourteenth, and fifteenth claims are not barred to the extent that they relate to the first-degree attempted murder and protection order violation charges.

### C.      *Attorney's Fees*

Defendants also seek their attorney's fees in defending against Plaintiff's tort claims pursuant to Section 13-17-201 of the Colorado Revised Statutes.  § 13-17-201 states:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

Colo Rev. Stat. § 13-17-201.

Although the statute expressly refers to Rule 12(b) of the Colorado Rules of Civil Procedure, the Tenth Circuit has held that the statute applies with equal force when a federal court dismisses a pendent tort "action" under Federal Rule 12(b).  *Jones v. Denver Post Corp.,* 203 F.3d 748, 757 (10th Cir. 2000).  Here, however, the court has found that Defendants' Rule 12(b)(1) arguments fails, at least in part, as to four of Plaintiff's five state law tort claims.  As

16

such, because the court finds that Plaintiff's state-law tort "action" is not properly dismissed in

its entirety, an award of attorney's fees pursuant to § 13-17-201 is not appropriate.

Therefore, for the foregoing reason, the court finds that Defendants' Motion to Dismiss is

properly granted in part and denied in part.

## II.   *MOTION TO AMEND*

In his proposed amended Prisoner Complaint (Doc. No. 60-1 [Proposed Am. Compl.]),

Plaintiff seeks to add five additional defendants: (1) Robert Arellano, an SPD officer; (2) Nancy

Schwan, also an SPD officer; (3) Ms. Smith, Plaintiff's ex-wife; (4) Mr. Burks, one of the

passengers in Ms. Smith's car at time time of the alleged ramming incidents; and (5) Mr.

Glaviano, the eyewitness to at least one of the ramming incidents.  Plaintiff also seeks to add five

new state-law tort claims for (1) civil conspiracy against all of the individual defendants and

proposed individual defendants; (2) negligence against Defendants Bryant and Montoya and

Officers Arrellano and Schwan; (3) negligent supervision against the City of Sheridan,

Defendants Bryant and Montoya, and Officers Arellano and Schwan; (4) *respondeat superior*

against the City of Sheridan, Defendants Bryant and Montoya, and Officers Arellano and

Schwan; (5) "failure to train and supervise" against the City of Sheridan and Defendant Bryant;

and (6) defamation against Defendants Bryant and Montoya, and Ms. Smith and Mr. Burks.

Plaintiff also seeks to amend (1) his § 1983 conspiracy claim so that it is directed at all of

the proposed individual defendants, and (2) his remaining § 1983 claims so that they are also

directed at Officers Arellano and Schwan.  In addition, Plaintiff seeks to add a § 1983 claim

against Defendants Bryant and Montoya and Officers Arellano and Schwan for violating his

17

Fourteenth Amendment due process rights under *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Finally, Plaintiff seeks to amend his Complaint to clarify that there were two preliminary hearings held in his criminal case.  (Mot. Am. at 1.)

Defendants argue that Plaintiff's proposed claims against the existing and proposed defendants would be futile.[5]  "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the [] court may deny leave to amend where amendment would be futile.  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999) (citations omitted).  "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim."  *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (citations omitted).  As such, the court reviews Plaintiff's proposed Amended Complaint to determine whether it would be futile, in whole or in part.[6]

---

[5] Defendants also appear to argue that Plaintiff's Motion and proposed Amended Complaint are unduly delayed.  (Resp. Mot. Am. at 4.)  However, Plaintiff's Motion to Amend was filed two days prior to the deadline for joinder of parties and amendment of pleadings, as established at the Preliminary Scheduling Conference.  (*See* Minute Entry, Doc. No. 42.)  The court declines to find that Plaintiff's proposed amendments were unduly delayed where he fully complied with the pertinent court-ordered deadline.  *See also Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006) (the purpose of Rule 15 "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." (internal quotations and citation omitted).

[6] To the extent that Defendants have not explicitly argued that some of Plaintiff's amendments are futile, the court finds it has authority to raise such issues *sua sponte* under 28 U.S.C. § 1915(e)(2)(ii).

### A.      State Law False Arrest and False Imprisonment Claims

Plaintiff's proposed Amended Complaint again includes two state law claims for false arrest and false imprisonment at claims twelve and thirteen, respectively.  For the reasons discussed *supra* with respect to Defendants' Motion to Dismiss, the court finds these claims would be futile.  More specifically, because Plaintiff filed notice with the City of Sheridan Attorney's office on July 7, 2011—well over 182 days after his arrest on February 12, 2010—and because Plaintiff did not file any notice after his arrest on August 18, 2011 relating to the protection order violation charges, Plaintiff's twelfth and thirteenth claims are barred under the CGIA.

### B.      State Law Malicious Prosecution Claim

Plaintiff's proposed Amended Complaint again includes a state-law claim for malicious prosecution at claim six.  For the reasons discussed *supra* with respect to Defendants' Motion to Dismiss, the court finds this claim is futile to the extent it relates to the filing of second-degree murder charges against Plaintiff on February 1, 2010.  Plaintiff did not file notice with the City of Sheridan Attorney's Office until July 7, 2011—well over 182 days after he made his initial appearance on these charges on April 21, 2010.  Accordingly, Plaintiff's sixth claim is barred under the CGIA to the extent that it relates to the second-degree attempted murder charges filed on February 1, 2010.

### C.      Proposed Civil Conspiracy Claim

Defendants argue that Plaintiff's proposed seventh claim for state-law civil conspiracy fails to state a claim for relief.  (Resp. Mot. Am. at 10.)  The court agrees.

"To establish a civil conspiracy in Colorado, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Nelson*, 908 P.2d at 106.  Here, Plaintiff includes only a conclusory allegation that Defendants Bryant and Montoya and proposed Defendants Arellano, Schwan, Smith, Burks, and Glaviano "conspir[ed] to violate the plaintiff's civil rights."  (Am. Compl. ¶ 70.)  This is insufficient to establish a meeting of the minds between these individuals as to an object or course of action.  *Houston v. Mile High Adventist Acad.,* 846 F. Supp. 1449, 1457-58 (D. Colo. 1994).  Accordingly, the court finds that Plaintiff's proposed civil conspiracy claim is futile as to all existing and proposed individual defendants.

### D.    *Proposed Negligence Claim*

Defendants argue that Plaintiff's proposed eighth claim for negligence fails because, by definition, simple negligence cannot constitute the willful and wanton conduct necessary to waive immunity under the CGIA.  (Resp. Mot. Am. at 9.)

The court rejects this argument.  Defendants have failed to cite, nor can this court otherwise locate, any law to support that the CGIA's waiver of immunity for only willful and wanton conduct necessarily precludes a claim for negligence.  In fact, to the contrary, several cases from this district have allowed a plaintiff to proceed on a negligence claim so long as the plaintiff ultimately proves that the defendants acted willfully and wantonly.  *See Medina v. Petross,* Case No. 08-cv-01125-REB-CBS, 2010 WL 1258083, at *4 (D. Colo. Feb. 25, 2010) (citing *Robinson v. City & Cnty. of Denver,* 39 F. Supp. 2d 1257, 1263 (D. Colo. 1999))

20

("Defendants are entitled to immunity with respect to Mr. Medina's negligence claim *unless* he shows that Defendants acted willfully and wantonly") (emphasis added); *A.B. ex rel. B.S.,* 831 F. Supp. 2d 1226, 1258-59 (D. Colo. 2011) (denying summary judgment as to common law claims, including a negligence claim, where there was a genuine issue of material fact as to whether the defendant's actions were willful and wanton); *Martin v. North Metro Fire Rescue Dist.,* Case No. 07-cv-00977-WYD-KLM, at *6 (D. Colo. Dec. 13, 2007) (declining to dismiss a negligent supervision claim because the plaintiff alleged sufficient facts to demonstrate willful and wanton misconduct).

Nevertheless, for reasons discussed *infra*, the court finds that this claim is futile as to Officers Arellano and Schwan.  As such, the court finds that Plaintiff's Motion to Amend is properly granted to the extent that it seeks to add a negligence claim against Defendants Bryant and Montoya only.

### E.    *Negligent Supervision, Failure to Train, and Respondeat Superior Claims*

Defendants argue that the City of Sheridan is immune from liability on Plaintiff's ninth, tenth, and eleventh claims for negligent supervision, *respondeat superior,* and failure to train and supervise, respectively.  (Resp. Mot. Am. at 8-9.)  Defendants also argue that Plaintiff's *respondeat superior* claim fails as to the existing and proposed individual defendants because a *respondeat superior* claim can only be asserted against an employer.  (*Id.* at 9.)  The court agrees with these arguments and also finds that Plaintiff's negligent supervision and "failure to train and supervise" claims also fail as to the individual defendants.

21

As discussed *supra* with respect to Defendants' Motion to Dismiss, the City of Sheridan cannot be held liable on any of Plaintiff's state law claims because the individual defendants' alleged conduct does not fall within the express waiver provisions of Colo Rev. Stat. § 24-10-106. *Carothers,* 159 P.3d at 650; *A.B. ex rel. B.S.,* 831 F. Supp. 2d at 1259-60. The City cannot be held liable for its own willful and wanton conduct, nor for the willful and wanton conduct of the individual defendants. *Carothers,* 159 P.3d at 650. This includes entity liability under a *respondeat superior* or failure to supervise theory. *See A.B. ex rel. B.S.,* 831 F. Supp. 1259-60. Therefore, Plaintiff's proposed ninth, tenth, and eleventh claims are futile to the extent they are directed at the City of Sheridan.

In addition, the court finds that Plaintiff may not maintain a claim for *respondeat superior,* negligent supervision, or "failure to train and supervise" against Defendants Bryant and Montoya and Officers Arellano and Schwan because they are not employers. "Under the *respondeat superior* doctrine, an *employer* is liable for torts of an employee acting within the scope of employment." *Stokes v. Denver Newspaper Agency, LLP,* 159 P.3d 691, 694 (Colo. App. 2006) (emphasis added); *see also Raleigh v. Performance Plumbing & Heating,* 130 P.3d 1011, 1019 (Colo. 2006); *Smith v. Multi-Financial Secs. Corp.,* 171 P.3d 1267, 1271 (Colo. App. 2007). Similarly, a claim for negligent supervision, arises only when "an *employer* knew or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm." *Gordon v. Boyles,* 99 P.3d 75, 81 (Colo. App. 2004) (citing *Moses v. Diocese of Colo.,* 863 P.2d 310 (Colo. 1993)) (emphasis added); *see also Loveland ex rel. Loveland v. St. Vrain Valley Sch. Dist.,* --- P.3d ----, 2012 WL 2581034, at *6 (Colo. App. July 5, 2012) (citing

*Destefano v. Grabian,* 763 P.2d 275, 288 (Colo. 1988) (the tort of negligent supervision imposes "a duty on *employers* to prevent foreseeable harm to third parties cause by the conduct of an employee.") (emphasis added).  As such, these claims are viable only as to an employer; they cannot be the basis of liability against an individual.

Finally, the court has conducted an exhaustive search and is unable to locate any Colorado case law upholding the viability of a "failure to train and supervise" tort claim, at least insofar as that claim may be asserted separate and apart from a claim for negligent supervision.[7] As such, the court finds that Plaintiff's eleventh claim for "failure to train and supervise" is redundant of his ninth claim for negligent supervision.

Accordingly, for the foregoing reasons, the court finds that Plaintiff's proposed ninth claim for negligent supervision, tenth claim for *respondeat superior,* and eleventh claim for "failure to train and supervise" are futile as to both the City of Sheridan and the existing and proposed individual defendants.  Therefore, the court finds that Plaintiff's Motion to Amend is properly denied to the extent that it seeks to add these claims.

---

[7] Instead, a failure to train and supervise is a basis by which to attach liability to a municipality under § 1983.  *See City of Canton v. Harris,* 489 U.S. 378, 388 (1989).

**F.      *Proposed Defendants Arellano and Schwan***

      **1.      *Individual Capacity Claims***

Defendants argue that Plaintiff's proposed Amended Complaint does not include sufficient factual allegations to state any cognizable claim for relief against Officers Arellano and Schwan in their individual capacities.  (Resp. Mot. Am. at 4-7.)  The court agrees.[8]

Plaintiff's proposed Amended Complaint contains only three factual allegations relating to Officers Arellano and Schwan.  Plaintiff first states that "[Defendant] Bryant failed to go to the crime scene or send an officer to the crime scene" even though "officers under [Defendant] Bryant's command, including Officers Montoya, Arellano, and Schwan[] either converged on or passed the crime scene several times during the investigation of the alleged intentional violent rammings."  (Am. Compl. ¶ 12.)  Plaintiff further alleges that, as a consequence, Officers Arellano and Schwan "failed to investigate the facts of the alleged intentional violent rammings" (*id*. ¶ 19) and "failed to report or memorialize the fact that none of them scene [sic] any evidence at the alleged crime scene . . . that would substantiate the allegation that a [sic] intentional violent ramming, at a high speed, took place . . . ." (*id.* ¶ 13).[9]

---

[8] Because it is not readily apparent when the purported injuries resulting from Officers Arellano and Schwan's alleged conduct accrued, and because—consistent with the court's discussion of Defendants' Motion to Dismiss—the CGIA does not bar all of Plaintiff's state law claims, the court does not address Defendants' alternative argument that Plaintiff failed to provide timely notice under Colo. Rev. Stat. § 24-10-109 of his proposed claims against Officers Arellano and Schwan.  (Resp. Mot. Am. at 7.)

[9] Plaintiff's remaining allegations against Officers Arellano and Schwan are all conclusory averments without any supporting factual averments and therefore need not be considered by the court.  (*See* Am .Compl. ¶ 52, 55, 58, 61, 67, 70, 72,76, 84, 86); *see also*

The court agrees with Defendants that the essence of Plaintiff's allegations is that "Officers Arellano and Schwan drove past the scene of either one or both of the alleged rammings and failed to investigate because they were not directed to do so by a superior officer." (Resp. Mot. Am. at 6.)  Taken alone, the court finds that these allegations fail to state a claim for relief against Officers Arellano and Schwan under any of the theories included in Plaintiff's proposed Amended Complaint.

First, as to Plaintiff's proposed first and second claims, to the extent that a failure to investigate is cognizable under § 1983, *see, e.g., Jama v. City and Cnty. of Denver,* Case No. 08-cv-01693-MSK-KLM, 2010 WL 3615027, at *5-8 (D. Colo. Sept. 9, 2010), Officers Arellano and Schwan failed to investigate the scene of the alleged rammings not on their own volition, but because Defendant Bryant did not send them to the scene. *See also Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").  As to Plaintiff's proposed third, fourth, and fifth claims for malicious prosecution under § 1983 and Colorado law, Plaintiff's allegations do not sufficiently demonstrate that Officers Arellano and Schwan's failure to investigate the rammings cause his continued confinement or prosecution. *Novitsky,* 491 F.3d 1244, 1258 (10th Cir. 2007); *Hewitt v. Rice,* 119 P.3d 541,544 (Colo. App. 2004) (citing *Thompson v. Maryland Cas. Co.,* 84 P.3d 496, 503 (Colo. 2004)) (to prevail on a claim for malicious prosecution, a

---

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

plaintiff must establish that, *inter alia,* the defendant contributed to bringing a criminal proceeding against the plaintiff).

As to Plaintiff's proposed fifth and seventh claims for conspiracy under § 1983, Plaintiff's allegations fail to establish that Officers Arellano and Schwan had a meeting of the minds, either with each other or the other defendants, to violate Plaintiff's rights. *Gallegos v. City & Cnty. of Denver,* 984 F.2d 358, 364 (10th Cir. 1993); *see also Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir. 1983) (conclusory allegations of conspiracy are insufficient).

Plaintiff's proposed eighth claim for negligence also fails to state a claim against Officers Arellano and Schwan.  Again, Plaintiff's own allegations demonstrate that any failure to investigate by Officers Arellano and Schwan was not a result of their own allegedly unreasonable acts or omissions.  Rather, Officers Arellano and Schwan failed to conduct an investigation solely because Defendant Bryant did not direct them to conduct such an investigation and they had no independent duty to do so.  (*See* Am. Compl. ¶¶ 12-13.)

Plaintiff's proposed tenth and eleventh claims fail against Officers Arellano and Schwan, because, as discussed *supra,* negligent supervision and *respondeat superior* claims may only be brought against an employer.  As to Plaintiff's fifteenth claim for intentional infliction of emotional distress, the court finds that Plaintiff's allegations that Officers Arellano and Schwan did not investigate the scenes of the alleged rammings because they were not so directed fails to rise to conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 666 (Colo. 1999); *see also Culpepper*

26

*v. Pearl St. Bldg., Inc.,* 877 P.2d 663, 666 (Colo. 1999) (although ordinarily a question for the jury, the court must first determine whether reasonable persons could differ on whether the conduct was outrageous).

Finally, Plaintiff's proposed twentieth claim alleging that his due process rights under *Brady* were violated fails to state a claim against Officers Arellano and Schwan. Plaintiff's allegations fail to establish that these officers personally participated in the investigation of the alleged rammings; therefore, they also fail to establish that these officers personally failed to properly collect and preserve exculpatory evidence. *Foote,* 118 F.3d at 1423.

Accordingly, for the foregoing reasons, the court finds that Plaintiff's claims against Officers Arellano and Schwan fail to state a claim for relief. Therefore, the court finds that Plaintiff's Motion to Amend should be denied as futile to the extent that it seeks to add Officers Arellano and Schwan as defendants.

### 2.   *Official Capacity Claims*

Plaintiff's proposed Amended Complaint also asserts claims against Officers Arellano and Schwan in their official capacities. As stated above, official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. *Graham,* 473 U.S. at 165.

"Where a suit contains both entity and official capacity claims, the only defendant is the entity." *Doe v. Douglas Cnty. Sch. Dist.,* 775 F. Supp. 1414, 1416 (D. Colo. 1991). Thus, Plaintiff's proposed official-capacity claims against Officers Arellano and Schwan are redundant not only of Plaintiff's claims against the City of Sheridan, but also of Plaintiff's official capacity

27

claims against Defendants Bryant and Montoya.  Naming either the entity or a municipal official

in his or her official capacity is sufficient to state a claim against a municipality.  *Stump v. Gates,*

77 F. Supp. 808, 816 n.3 (D. Colo. 1991).  "Naming both is redundant."  *Id.*  As such, the court

finds that Plaintiff's proposed claims against Officers Arellano and Schwan in their official

capacity are properly rejected as redundant and superfluous.

### G.      *Proposed Defendants Glaviano and Burks*

Outside of the mere fact that he was in the car with Ms. Smith and her two children (Am.

Compl. at 6 ¶ 5) at the time of the alleged ramming incidents, Plaintiff's proposed Amended

Complaint is devoid of any factual allegations against Mr. Burks.  As such, the court finds that

Plaintiff has failed to state a claim for relief against Mr. Burks under any of the theories included

in Plaintiff's proposed Amended Complaint.

Plaintiff's only factual allegation relating to Mr. Glaviano, who apparently was only a

witness to certain events, is that Defendant Bryant interviewed him on January 25, 2010, and his

story "contradicted that of Mrs. Smith and Mr. Burk [sic]."  (*Id.* at 8 ¶ 24.)  The court finds that

this scant "allegation," if it could be characterized as such under any circumstances and which, if

anything, only supports Plaintiff's claims against Defendants Bryant and Montoya, fails to

support a claim for relief against Mr. Glaviano under any of the theories included in Plaintiff's

proposed Amended Complaint.

Accordingly, the court finds that Plaintiff's Motion to Amend is properly denied to the

extent that it seeks to add Messrs. Burks and Glaviano as defendants.

### H.      Proposed Defendant Smith

In Plaintiff's proposed Amended Complaint, Ms. Smith is named as a defendant to claim

five for conspiracy under § 1983, claim six for malicious prosecution, claim seven for state law

civil conspiracy, claim fifteen for intentional infliction of emotional distress, and claim nineteen

for defamation.  (*See* Am. Compl.)

The court finds that Plaintiff's claims for conspiracy under both § 1983 and state law are

futile for the reasons discussed both *supra.*  Plaintiff's conclusory allegation that Ms. Smith, the

individual defendants, and other proposed defendants "conspir[ed] to violation the Plaintiff's

rights" (Am. Compl. ¶ 70; *see also id.* ¶ 64) is insufficient to state a claim for conspiracy under

Colorado law or § 1983.  *Gallegos,* 984 F.2d at 364; *Nelson,* 908 P.2d at 106; *see also*

*Benavidez,* 722 F.2d at 618.

However, the court concludes that Plaintiff's remaining claims against Ms. Smith are not

clearly futile.  First, as to Plaintiff's state law malicious prosecution against Ms. Smith, Plaintiff

must allege (1) that Ms. Smith contributed to bringing a criminal proceeding against Plaintiff, (2)

the proceeding was resolved in Plaintiff's favor, (3) there was no probable cause for the

proceedings, (4) Ms. Smith acted with malice, and (5) Plaintiff incurred damages.  *Hewitt,* 119

P.3d at 544.

There can be no doubt that Ms. Smith contributed to bringing the criminal charges

against Plaintiff.  As the complaining witnesses, Ms. Smith allegedly falsely overstated the

severity of alleged ramming incidents.  Further, Ms. Smith allegedly falsely stated to Defendant

Bryant that her pregnancy was terminated as a result of the alleged rammings.  These allegations

not only may be sufficient to establish that Ms. Smith assisted in the criminal proceedings against Plaintiff, they also infer that Ms. Smith acted with malice given Plaintiff's allegation that Ms. Smith instead had a voluntary abortion. (4/5/2012 Handy Decl. ¶ 7.)

As Plaintiff was allegedly acquitted of the charges against him (Am. Compl. ¶ 44), the only element remaining is whether there was probable cause for the criminal proceedings against Plaintiff.  Plaintiff admits that at the two preliminary hearings held in his criminal case on June 16, 2010 and June 16, 2011, the state court judge found probable cause to support both the second-degree attempted murder charges and the first-degree attempted murder charges, respectively.  (*See* Am. Compl. ¶¶ 32, 39, Ex. 1 at 6, 22.)

A judicial finding of probable cause is *prima facie* evidence of probable cause to prosecute.  *Wigger v. McKee,* 809 P.2d 999, 1005 (Colo. App. 1990).  This *prima facie* evidence may, however, be rebutted by proof that the defendant misrepresented, withheld, or falsified evidence at the hearing.  *Id.*  Here, Plaintiff maintains that Defendants Bryant and Montoya "presented false and perjured testimony" relating to the extent of damage to Ms. Smith's vehicle "for the purpose of deceiving the judge into finding probable cause." (Am. Compl. ¶ 32, 39.)  As such, the fact that a court found evidence presented at a preliminary hearing to show probable cause is not necessarily sufficient to foreclose Plaintiff's malicious prosecution claim.

The court also cannot say that Plaintiff's intentional infliction of emotional distress claim is clearly futile.  Assuming the truth of Plaintiff's allegations, a jury could arguably find that Ms Smith's false statement that her pregnancy terminated as a result of Plaintiff's alleged rammings

of her car, when she in fact had a voluntary abortion, constitutes outrageous conduct. *Coors Brewing,* 978 P.2d at 666.

Finally, the court cannot find that Plaintiff's defamation claim against Ms. Smith is futile. Assuming the truth of Plaintiff's allegation that Ms. Smith falsely stated to Defendant Bryant that her pregnancy was terminated as a result of Plaintiff's actions, Plaintiff arguably could establish a claim for defamation *per se. See Keohane v. Wilkerson,* 859 P.2d 291, 302 (Colo. App. 1993) (statement may constitute defamation *per se* if it imputes a criminal offense).

Accordingly, although the court finds that Plaintiff's state-law and § 1983 conspiracy claims are futile as to Ms. Smith, the court does not conclude, at least at this juncture, that Plaintiff's malicious prosecution, intentional infliction of emotional distress, and defamation claims against her are clearly futile. Rather, the court finds that these claims are better addressed after Ms. Smith is served, if and when she files a dispositive motion. *Stender v. Cardwell,* Case No. 07-cv-02503-WJM-MJW, 2011 WL 12234414, at *3 (D. Colo. Apr. 1, 2011).

### I.        Brady *Violation and Defamation Claims*

Defendants have not addressed whether Plaintiff's proposed defamation claim and § 1983 claim for a *Brady* violation are futile against Defendants Bryant and Montoya. At this juncture, in the absence of appropriate argument, the court is unable to conclude that these claims are clearly futile. *See, e.g., Connick v. Thompson,* 131 S. Ct. 1350 (2011) (recognizing the viability of a § 1983 claim based on a *Brady* violation). As such, the court elects to address the sufficiency of these claims if and when Defendants Montoya and Bryant file a dispositive motion as to these claims. *See Stender*, 2011 WL 12234414, at *3.

### J.    *Factual Clarification Regarding Preliminary Hearings*

Finally, in light of the fact that at least some of the claims contained in Plaintiff's

proposed Amended Complaint are viable, the court see no harm or prejudice in allow Plaintiff to

clarify, as a factual matter, that *two* preliminary hearings were held in his criminal case.

Accordingly, the court finds that Plaintiff's Motion to Amend is properly granted in this respect.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that the "Sheridan Defendants' Motion to Dismiss for Lack of Subject

Matter Jurisdiction" (Doc. No. 19) be GRANTED in part and DENIED in part as follows:

1.      The court recommends that Defendants' Motion to Dismiss be GRANTED to the

extent that it seeks to dismiss Plaintiff's (1) state-law claims against Defendants Bryant

and Montoya in their official capacities; (2) thirteenth claim for state-law false

arrest/false imprisonment, (2) and sixth, eleventh, fourteenth, and fifteenth claims, but

only insofar as those claims relate to the charges of second-degree attempted murder

brought against Plaintiff.

2.      The court recommends that Defendants' Motion to Dismiss be DENIED to the

extent that it seeks to dismiss Plaintiff's sixth, eleventh, fourteenth, and fifteenth claims

for relief to the extent those claims relate to the charges against Plaintiff for first-degree

attempted murder and violating the protection order.

The court further RECOMMENDS that Plaintiff's "Motion to Amend Complaint" (Doc.

No. 60) be GRANTED in part and DENIED in part.  Specifically, the court recommends that

Plaintiff's Motion be DENIED to the extent that it seeks to assert (1) state-law claims for civil

conspiracy, negligent supervision, *respondeat superior*, and "failure to train and supervise"; (2)

any individual- *or* official-capacity claims against proposed defendants Arellano and Schawn;

(3) any claims against proposed defendants Glaviano and Burks; and (4) a § 1983 conspiracy

claim against proposed defendant Smith.  Otherwise, the court recommends that Plaintiff's

Motion to Amend be GRANTED in all other respects.  Accordingly, the court recommends that

the Clerk of Court be directed to file Plaintiff's proposed Amended Complaint (Doc. No. 60-1)

with instructions that it is accepted as filed with the following exceptions:

1.  Plaintiff's first, second, third, and fourth claims are not accepted as to proposed defendants Arellano and Schwan;

2.  Plaintiff's fifth claim is not accepted as to proposed defendants Arellano, Schwan, Smith, Glaviano, and Burks;

4.  Plaintiff's sixth claim is not accepted as to proposed defendants Arellano, Schwan, Glaviano, and Burks; and is also not accepted to the extent that it relates to the second-degree attempted murder charges filed against Plaintiff;

5.  Plaintiff's seventh claim is not accepted;

6.  Plaintiff's eighth claim is not accepted as to proposed defendants Arellano and Schawn;

7.  Plaintiff's ninth, tenth, eleventh, twelfth, and thirteenth claims are not accepted;

8.  Plaintiff's fifteenth claim is not accepted as to proposed defendants Arellano, Schwan, Burks, and Glaviano;

9.  Plaintiff's nineteenth claim is not accepted as to proposed defendant Burks; and

10.  Plaintiff's twentieth claim is not accepted as to proposed defendants Arellano and Schwan.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

34

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 15th day of February, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge