IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Criminal Action No. 12-cv-01015-WYD-KMT

WYATT T. HANDY, JR.,

       Plaintiff,

v.

CITY OF SHERIDAN;
DET. KRISTINE BRYANT; in her individual and official capacity, and,
OFF. MIKE MONTOYA; in his individual and official capacity,

       Defendants.

_____

## ORDER
_____

THIS MATTER is before the Court on:

(1) Detective Kristine Bryant's Motion For Summary Judgment [ECF No. 109];

(2) Officer Mike Montoya's Motion For Summary Judgment [ECF No. 110];

(3) the City Of Sheridan's Motion For Summary Judgment [ECF No. 111];

(4) Wyatt T. Handy, Jr.'s, Motion To Continue And/Or Stay Proceedings In This

   Case And To Modify All Deadlines [ECF No. 134];

(5) Wyatt T. Handy, Jr.'s, Motion For Court To Order Clerk To Send Plaintiff A

   Copy Of The Register Of Actions [ECF No. 176]; and,

(6) Wyatt T. Handy, Jr.'s, Motion To Amend Or Alter Judgment Pursuant To Fed.

   R. Civ. P. 59(e) [ECF No. 177].

For the reasons stated below:  (1) the defendants' Motions For Summary Judgment

[ECF Nos. 109-111] are GRANTED and plaintiff, Wyatt T. Handy, Jr.'s, claims are

DISMISSED WITH PREJUDICE; (2) Wyatt T. Handy, Jr.'s, Motion To Continue And/Or Stay Proceedings In This Case And To Modify All Deadlines [ECF No. 134] is DENIED AS MOOT; (3) Wyatt T. Handy, Jr.'s, Motion For Court To Order Clerk To Send Plaintiff A Copy Of The Register Of Actions [ECF No. 176] is DENIED; and, (4) Wyatt T. Handy, Jr.'s, Motion To Amend Or Alter Judgment Pursuant To Fed. R. Civ. P. 59(e) [ECF No. 177] is DENIED.

## BACKGROUND

This suit arises out of events connected to plaintiff, Wyatt T. Handy, Jr.'s, February 10, 2010, arrest by Sheridan Police Department ("SPD") personnel and subsequent criminal charges faced as a result of that arrest.

On January 19, 2010, Handy's ex-wife, Lacy Jo Smith, and James Burks entered SPD and spoke with Detective Kristine Bryant about an alleged incident regarding Handy. Smith told Detective Bryant that Handy had followed her car around town and violently rammed her car twice. Allegedly, the second ramming occurred while Smith was in a stopped position at a red light and was so forceful that Smith's car entered the intersection after being struck by Handy's car. According to Smith, her two children and Burks were also in the car at the time of the alleged ramming. SPD Officer Mike Montoya inspected Smith's car that day and observed "visible damage" to the "rear bumper, trunk, left brake light cover, and left quarter panel." ECF No. 110-5, pp. 4-5.

On February 1, 2010, Smith contacted Detective Bryant and stated that the alleged violent rammings terminated her pregnancy. Detective Bryant then submitted an affidavit in support of an arrest warrant for Handy for second degree attempted murder and other related offenses. SPD arrested Handy on February 10, 2010, and a

protection order was subsequently issued in connection with charges filed against him.

On May 28, 2010, Detective Bryant initiated charges against Handy for allegedly violating the protection order.  Detective Bryant submitted an affidavit [ECF No. 109-6] that Handy alleges included false statements that he violated the protection order by contacting Smith in March and April of 2010.

On June 16, 2010, Handy attended a preliminary hearing for his second degree attempted murder charges.  Handy alleges that Detective Bryant and Officer Montoya gave false testimony and misrepresented the facts surrounding the alleged violent ramming.  On June 16, 2011, Handy attended a second preliminary hearing held to determine whether probable cause existed to increase his second degree attempted murder charge to first degree extreme indifference attempted murder.  Handy alleges that Detective Bryant and Officer Montoya gave false testimony and misrepresented the facts surrounding the alleged violent ramming in order to establish probable cause for the first degree extreme indifference attempted murder charges.  The judge found that probable cause existed, and Handy was charged with first degree extreme indifference attempted murder.

Handy's trial commenced on August 16, 2011, and on August 18, 2011, a jury acquitted him of all charges.  However, Handy was arrested that same day for the alleged protection order violation.  On December 7, 2011, the protection order violation charge was dropped.

Handy filed this suit against the defendants on April 16, 2012, alleging seven claims under 42 U.S.C. § 1983[1] and five Colorado state law tort claims:  (1) two

---

[1] Pursuant to 42 U.S.C. § 1983:

malicious prosecution claims; (2) false arrest / false imprisonment; (3) gross negligence; and, (4) intentional infliction of emotional distress.  On June 6, 2012, the defendants filed a Motion to Dismiss For Lack Of Subject Matter Jurisdiction [ECF No. 19], arguing that this Court lacks subject matter jurisdiction over Handy's tort claims because he did not provide timely notice of this suit to the defendants pursuant to the Colorado Governmental Immunity Act ("CGIA"), Colorado Revised Statues § 24-10-101, *et seq.*  On November 7, 2012, Handy filed a Motion to Amend Complaint [ECF No. 60], seeking to add five additional defendants and seven new claims.

On February 15, 2013, Magistrate Judge Tafoya issued a Recommendation [ECF No. 93] regarding the defendants' Motion To Dismiss For Lack of Subject Matter Jurisdiction [ECF No. 19] and Handy's Motion to Amend Complaint [ECF No. 60].[2]  Magistrate Judge Tafoya recommended that both motions be denied in part and granted in part.  On March 26, 2013, I issued an Order [ECF No. 102] affirming in part and rejecting in part Magistrate Judge Tafoya's Recommendation [ECF No. 93].  My March 26, 2013, ruling allowed Handy to file an Amended Complaint [ECF No. 60-1] including only the claims specifically allowed for by the Order.  *See* ECF No. 102, pp. 27-29.

---

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[2] At the time the defendants filed their Motion To Dismiss For Lack of Subject Matter Jurisdiction [ECF No. 19] and Handy filed his Motion To Amend Complaint [ECF No. 60], Handy was proceeding *pro se*, which is the reason I referred the motions to Magistrate Judge Tafoya.

On May 9, 2013, defendants, Detective Bryant, Officer Montoya, and the City of Sheridan, filed Motions For Summary Judgment [ECF Nos. 109 – 111] arguing that they are entitled to judgment as a matter of law on Handy's remaining claims.  On August 20, 2013, Handy filed a Motion To Continue And/Or Stay Proceedings In This Case And To Modify All Deadlines [ECF No. 134] arguing that a stay is warranted because his incarceration and apparent imminent transfer to another detention facility prevents him from adequately responding to pleadings.  On January 27, 2014, Handy filed a Motion For Court To Order Clerk To Send Plaintiff A Copy Of The Register Of Actions [ECF No. 176].  That same day, Handy filed Motion To Amend Or Alter Judgment Pursuant To Fed. R. Civ. P. 59(e) [ECF No. 177] arguing that my denial of his Motions For Court To Allow Plaintiff To Respond To Defendants' Motion For Summary Judgment And To Strike Plaintiff's Previous Attorney's Response To Defendant's Motion As Moot [ECF Nos. 131 & 132] was in error.

## ANALYSIS

### A.  Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).  "A fact is 'material' if,

under the governing law, it could have an effect on the outcome of the lawsuit."
*Horizon/CMS Healthcare*, 220 F.3d at 1190. "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." *Horizon/CMS Healthcare*, 220 F.3d at 1190. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co.*, 226 F.3d at 1148 (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

## B. Detective Bryant And Officer Montoya's Motions For Summary Judgment [ECF Nos. 109 & 110][3]

Handy asserts 14 claims against Detective Bryant and 10 claims against Officer Montoya. Detective Bryant and Officer Montoya argue that they are entitled to summary judgment on all claims.

### 1. Handy's § 1983 Claims

Pursuant to § 1983, Handy asserts seven claims (Claims 1-5, 17, & 18) against Detective Bryant and five claims (Claims 1 through 5) against Officer Montoya. Detective Bryant and Officer Montoya argue that qualified and absolute immunity bar those claims.

---

[3] At the time the defendants filed their Motions For Summary Judgment [ECF Nos. 109-111], Handy was represented by counsel and his counsel responded to the motions. *See* ECF Nos. 94, 95, & 115-117. Thus, the motions were not referred to Magistrate Judge Tafoya.

### a. Qualified Immunity

Detective Bryant argues that qualified immunity bars Claims 1, 2, 17, and 18 while Officer Montoya argues that qualified immunity bars Claims 1 and 2.

"In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotations and citation omitted). Once the affirmative defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "that the defendant's actions violated a constitutional or statutory right" and that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotations and citation omitted); *see also Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

In the context of a motion for summary judgment, I must first consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [officials'] conduct violated a constitutional right?" *Holland*, 268 F.3d at 1185. If I determine that there has been a violation of a constitutional right, then I must "ask whether the right was clearly established at the time of the defendant[s'] unlawful conduct." *Id.* at 1186 (internal quotations and citation omitted). If the plaintiff successfully establishes the violation of a clearly established right, the burden then shifts to the defendant, who must prove that there are no genuine issues of material fact

and that the defendant is entitled to judgment as a matter of law. *Medina*, 252 F.3d at

1128; *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

Recently, the Supreme Court of the United States altered somewhat the

analytical process that may be used when a defendant claims the protection of qualified

immunity.  *Pearson v. Callahan,* 555 U.S. 223 (2009).  Pursuant to *Saucier v. Katz,* 533

U.S. 194 (2001), a court addressing a claim of qualified immunity first must determine

whether the plaintiff has adduced facts sufficient to make out a constitutional or

statutory violation. *Id.* at 201. Under *Saucier,* a court must address and resolve this first

question before proceeding to the second step of the analysis, a determination of

whether the claimed constitutional or statutory right was established clearly at the time

of the alleged violation. *Id.*  In *Pearson,* the Supreme Court held that the sequential two

step analysis mandated in *Saucier*

> should no longer be regarded as mandatory.  The judges of the district
> courts and the courts of appeals should be permitted to exercise their
> sound discretion in deciding which of the two prongs of the qualified
> immunity analysis should be addressed first in light of the circumstances
> in the particular case at hand.

*Pearson,* 555 U.S. at 236.  The Supreme Court noted, however, that the sequence set

forth in *Saucier* often is the appropriate analytical sequence. *Id.*

### i. § 1983 Claims Based On Alleged Failure To Investigate (Claims 1 & 2)

#### (a) Claim 1:  Failure To / Duty To Investigate Under the Fourth Amendment

Handy alleges that Detective Bryant and Officer Montoya "failed to reasonably

interview witnesses readily available at the crime scene, investigate basic evidence . . .

or otherwise inquire if a crime had been committed at all." ECF No. 60-1, p. 12, ¶ 52.  I

find Handy's last allegation, "or otherwise inquire if a crime had been committed at all[,]" instructive.  From that statement, I glean that this claim targets Detective Bryant and Officer Montoya's pre-arrest investigation of the January 19, 2010, accident, or alleged lack thereof, and I will construe this claim as such.  Handy states that this alleged failure is a violation of the Fourth Amendment.  Because Detective Bryant and Officer Montoya assert qualified immunity, Handy must show, *inter alia*, that their actions violated the Fourth Amendment.

### (1) Whether Detective Bryant And Officer Montoya's Actions Violated A Clearly Established Constitutional Right

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Handy does not allege that Detective Bryant and/or Officer Montoya illegally searched his person or property.  Rather, Handy alleges that Detective Bryant and Officer Montoya failed to properly investigate Smith's allegations that led to his arrest.  Under the analytical framework of a qualified immunity claim, Handy as the plaintiff, has the burden of showing that Detective Bryant and Officer Montoya's conduct violated a constitutional right. *Medina,* 252 F.3d at 1128.  However, Handy cites no case law definitively stating that the Fourth Amendment incorporates a duty to investigate an alleged crime prior to arrest.  A duty to investigate, if such a duty does exist under the Fourth Amendment, is at best, under this specific set of circumstances, incidental to a law enforcement officer's duty to truthfully and accurately complete an affidavit used to secure an arrest warrant.

"It is a violation of the Fourth Amendment for an arrest affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit, *Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), or to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause, *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990)." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).  There is no evidence that Detective Bryant improperly completed her affidavit regarding the January 19, 2010, incident, and Officer Montoya did not generate an affidavit in support of Handy's arrest. Viewing the evidence in the light most favorable to Handy, he fails to show that Detective Bryant and Officer Montoya's conduct violated a clearly established constitutional right under the Fourth Amendment.  As such, Detective Bryant and Officer Montoya are entitled to qualified immunity regarding Handy's § 1983 claim for failure to / duty to investigate under the Fourth Amendment and this claim is DISMISSED WITH PREJUDICE.

### (b) Claim 2:  Failure To / Duty To Investigate Under the Fourteenth Amendment

Handy alleges that Detective Bryant and Officer Montoya "after deliberation, recklessly or intentionally failed to investigate." ECF No. 60-1, p. 12, ¶ 55.  Handy states that this alleged failure to investigate violates the Fourteenth Amendment.  Handy does not identify the scope of this claim *i.e.*, whether it relates to the pre-arrest investigation or post-arrest investigation.  This distinction is immaterial because viewing the evidence in the light most favorable to Handy, he fails to show that Detective Bryant and/or Officer Montoya's conduct violated his constitutional rights under the Fourteenth Amendment.

**(1) Whether Detective Bryant's Actions Violated A
Clearly Established Constitutional Right**

"The Due Process clause of the Fourteenth Amendment protects an individual's

life, liberty, and property against government actions." *Estate of B.I.C. v. Gillen*, 710

F.3d 1168, 1173 (10th Cir. 2013) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

"A government official violates an individual's Fourteenth Amendment rights by injuring

his life, liberty, or property interest with deliberate or reckless intent." *Webber v. Mefford*,

43 F.3d 1340, 1343 (10th Cir. 1994) (citation omitted).  Handy does not specifically state

what interest, if any, under the Fourteenth Amendment was abridged or hindered due to

Detective Bryant and Officer Montoya's alleged failure to investigate.  Assuming

*arguendo*, that Handy's liberty interest was abridged and hindered due to Detective

Bryant and Officer Montoya's alleged failure to investigate, there is no evidence that

they did so with deliberate or reckless intent.  Viewing the evidence in the light most

favorable to Handy, he fails to show that Detective Bryant and Officer Montoya's

conduct violated a constitutional right under the Fourteenth Amendment.  As such,

Detective Bryant and Officer Montoya are entitled to qualified immunity regarding

Handy's § 1983 claim for failure to / duty to investigate under the Fourteenth

Amendment and this claim is DISMISSED WITH PREJUDICE.

**ii.  § 1983 Claims Based On Protection Order Violation Charges
(Claims 17 & 18)**

Handy's arrest for the alleged protection order violation forms the basis for

Claims 17 and 18.  In Claim 17 (false arrest), Handy alleges that Detective Bryant

"subjected [him] to an arrest and [was] held in custody without probable cause, related

to the false protection order violation charge . . . " ECF No. 60-1, p. 22, ¶ 100.  Handy

alleges that these actions violate the Fourth Amendment.  In Claim 18 (false imprisonment), Handy alleges that Detective Bryant "caused [him] to be subjected to a restraint, in a bounded area, without justification or consent, related to the false protection order violation charge . . . " *Id.* ¶ 102.  Handy alleges that these actions also violate the Fourth Amendment.

The chief complaint underlying both claims is that Detective Bryant deliberately included a false statement and purposefully omitted a fact from the affidavit in order to secure an arrest warrant.  The false statement and omitted fact that Handy relies on is that Detective Bryant states in her affidavit that the repeated violations of the protection order occurred in Sheridan, Colorado.  Handy testified in his deposition that Detective Bryant knew that the violations could not have occurred in Sheridan because Handy was incarcerated in Denver County Jail when he wrote the letters and Smith was incarcerated at the Denver Women's Correctional Facility. ECF No. 109-11, p. 14 [p. 144, ll. 16-24].  Because Detective Bryant claims qualified immunity, Handy must show, *inter alia*, that Detective Bryant's misstatement violates a constitutional right under the Fourth Amendment.

### (a) Whether Detective Bryant's Actions Violated A Clearly Established Constitutional Right

Handy's false arrest and false imprisonment claims are one in the same, both focusing on whether probable cause existed to support his arrest. *See Kerns v. Bader*, 663 F.3d 1173, 1187 (10th Cir. 2011) ("To prove any of his claims [false arrest, false imprisonment, and malicious prosecution], Mr. Kerns acknowledges he must establish that his arrest and detention were without probable cause"); *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006) ("While constitutional claims for wrongful arrest, detention

and prosecution under § 1983 are analyzed in light of analogous torts . . . the focal point of our analysis is the probable cause supporting plaintiff's arrest . . .").

"Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (citing *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)). Handy was arrested on August 18, 2011, for the alleged protection order violation. In Detective Bryant's affidavit supporting Handy's arrest for violating the protection order, she states that an investigator delivered 11 letters to her that Handy wrote to Smith. ECF No. 109-6, p. 2. Detective Bryant further states that a valid protection order was in place which prevented Handy from contacting or communicating with Smith and that the violations occurred in Sheridan, Colorado. *Id.* at pp. 1-2. However, Detective Bryant states in her May 9, 2013, affidavit that:

> To the best of my knowledge, the protection order violation actually occurred in Denver where Mr. Handy was being detained. However, in my affidavit, I stated that the violation occurred in Sheridan. This was a typo on my part, as I forgot to change that section of the City's affidavit form when I was filling it out.

ECF No. 109-1, p. 3, ¶ 14. Thus, Detective Bryant admits that the alleged location of the violation is incorrect as stated in her original affidavit. As such, the issue is whether Detective Bryant's misstatement vitiates probable cause for Handy's arrest and constitutes a Fourth Amendment violation.

In *Taylor v. Meacham*, 82 F.3d 1556 (10th Cir. 1996), the United States Court of Appeals for the Tenth Circuit explicitly laid out the analysis a court undertakes when determining whether misstatements and/or omissions in an arrest warrant affidavit

vitiate probable cause for arrest.  The Tenth Circuit stated, in pertinent part:

> It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)).  Similarly, it is a Fourth Amendment violation to "knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Id.* (citing *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990)).  If an arrest warrant affidavit contains false statements, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Id.*

82 F.3d at 1562.  Applying this analytical framework, I first note that there is no evidence to suggest that Detective Bryant knowingly or with reckless disregard for the truth incorrectly stated the location of the alleged protection order violation.  Second, looking at the affidavit in the absence of Detective Bryant's misstatement, probable cause exists that Handy violated the protection order.  While there may be further inquiry as to where the violation occurred, it is clear that a violation occurred and the misstatement does not alter the probable cause determination.  Thus, Handy fails to show the Detective Bryant's actions violate a constitutional right under the Fourth Amendment and Detective Bryant is entitled to qualified immunity.  Therefore, Handy's § 1983 claims based on the protection order violation (Claims 17 & 18) are DISMISSED WITH PREJUDICE.

### b.  Absolute Immunity

Detective Bryant and Officer Montoya state that they are absolutely immune from Claims 3 through 5.  In Claim 3 (malicious prosecution), Handy alleges that Detective Bryant and Officer Montoya "maliciously instituted false criminal charges against the

plaintiff without probable cause . . . ". ECF No. 60-1, p. 13, ¶ 58. Handy alleges that these actions violate the Fourth Amendment. In Claim 4 (malicious prosecution), Handy alleges that Detective Bryant and Officer Montoya "maliciously manufactured evidence, and knowingly used that evidence along with perjured testimony to obtain a faulty probable cause determination, which deprived [him] of his right to a preliminary hearing and his right to a fair trial . . . " *Id.* at ¶ 61. Handy alleges that these actions violate the Fourteenth Amendment. In Claim 5 (conspiracy), Handy alleges that Detective Bryant and Officer Montoya "conspired to commit an individual act, or to commit a lawful act by unlawful means" to inflict injury upon him. *Id.* at p. 14, ¶ 64.

Handy testified in his deposition that Claims 3 through 5 are based on Detective Bryant and Officer Montoya's testimony at the preliminary hearings. *See* ECF No. 109-11, p. 17 [p. 154, ll. 19 – 25 / p. 156, ll.10 – 22], p. 18 [p. 157, ll. 19 – 25, p. 158, ll. 1-2, p. 159, ll. 1 – 25]. The Tenth Circuit has held that "[a] witness is absolutely immune from civil liability based on any testimony the witness provides during a judicial proceeding 'even if the witness knew the statements were false and made them with malice.'" *PJ v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 332 (1983)). A preliminary hearing is a judicial proceeding. *See, e.g.*, *Bradley v. Health Midwest, Inc.*, 203 F. Supp. 2d 1254, 1258 (D. Kan. May 23, 2002) (internal quotation marks and citation omitted) ("The Supreme Court has explained that adverse judicial proceedings begin at the earliest of either a formal charge, preliminary hearing, indictment, information, or arraignment"). Thus, Detective Bryant and Officer Montoya are absolutely immune to any claim based on their testimony at the preliminary hearings. As such, Claims 3 through 5, which are based on

Detective Bryant and Officer Montoya's alleged perjurious testimony at the preliminary

hearings, are DISMISSED WITH PREJUDICE.

### 2. Handy's State Tort Claims

#### a. Claim 6:  Malicious Prosecution

Handy alleges that Detective Bryant and Officer Montoya "maliciously instituted

false criminal charges against [him] without probable cause . . . " ECF No. 60-1, p. 14, ¶

67.  Handy does not specify the precise actions on which he bases this claim.

However, his deposition testimony regarding his § 1983 malicious prosecution claim

sheds light on this issue, and I will construe this claim as though it is based on Detective

Bryant and Officer Montoya's testimony at the preliminary hearings. *See* ECF No. 109-

11, p. 17 [p. 154, ll. 19 – 25 / p. 156, ll.10 – 22].

As previously mentioned, Detective Bryant and Officer Montoya are absolutely

immune under federal law from civil liability based on their testimony at the preliminary

hearings.  Detective Bryant and Officer Montoya state that under Colorado state law,

they are absolutely immune from civil liability based on their testimony at the preliminary

hearings.  They rely on *Wagner v. Board of County Comm'rs*, 933 P.2d 1311 (Colo.

1997).  In *Wagner*, the Supreme Court of Colorado adopted the functional approach to

determining whether to grant a witness absolute immunity as stated by the Supreme

Court of the United States in *Briscoe*.  As such, the Supreme Court of Colorado framed

the issue regarding witness immunity as "whether grand jury proceedings constitute

'judicial proceedings' such that grand jury witnesses are entitled to absolute immunity

from subsequent civil liability for their testimony." 933 P.2d at 1313.  In holding that

grand jury witnesses are entitled to absolute immunity, the Supreme Court of Colorado

stated:

> The function of a grand jury proceeding is to determine the true facts of a case in order to decide whether to indict a criminal defendant. This function closely resembles that of a trial, which is to determine the true facts of a case in order to decide whether to convict a criminal defendant.  Additionally, the United States Supreme Court has held that a prosecutor seeking an indictment is in the judicial phase of a criminal proceeding. *See Malley v. Briggs,* 475 U.S. 335, 343, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).  It thus follows that the grand jury, which decides whether to indict, is also part of the judicial phase. As such, we hold that grand jury proceedings constitute judicial proceedings which entitle participants to absolute immunity from subsequent civil liability.

*Id.*

*Wagner* addressed absolute immunity for witnesses testifying during grand jury proceedings, not during preliminary hearings.  The parties have not cited any Colorado state court that has specifically extended absolute immunity to witnesses who testify at a preliminary hearing.  In the absence of an authoritative pronouncement of law from a state's highest court, as is the case here, a federal court's task under the *Erie* doctrine is to predict how the state's highest court would rule on an issue. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("When no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do").[4]  Thus, I must predict how the Colorado Supreme Court would rule if it were presented with the issue of whether witnesses testifying at a preliminary hearing are entitled to absolute immunity from civil liability based on such testimony.

---

[4] Though jurisdiction in this case is premised on federal question subject matter jurisdiction, the *Erie* doctrine still applies. Wright, Miller & Cooper, FEDERAL PRACTICE and PROCEDURE:  Jurisdiction 2d § 4520 ("It is frequently said that the doctrine of *Erie Railroad Company v. Tompkins* applies only in diversity of citizenship cases; this statement is simply wrong.  The *Erie* case and the Supreme Court decisions following it apply in federal question cases as well") (emphasis added).

The purpose of a preliminary hearing is to determine whether probable cause exists to believe that a crime was committed and whether the defendant committed the crime. *See* Rule 5(a)(4) of the COLORADO RULES of CRIMINAL PROCEDURE. This is the initial "gatekeeping" judicial proceeding and if probable cause does not exist, the defendant is released. Thus, truthful testimony is necessary and required and witnesses at a preliminary hearing, much like those at a grand jury proceeding, should not bear the fear of possible civil liability while simultaneously testifying under oath. I predict that if the Colorado Supreme Court were presented with the issue of whether witnesses testifying at a preliminary hearing are entitled to absolute immunity, the court would extend its holding in *Wagner* to include witness testimony at preliminary hearings. Therefore, Detective Bryant and Officer Montoya are absolutely immune from Handy's Colorado state law malicious prosecution claim and this claim is DISMISSED WITH PREJUDICE.

### b.  Claims 8 & 14:  Negligence and Gross Negligence

In Claim 8 (negligence), Handy alleges that Detective Bryant and Officer Montoya "breach[ed] a legal duty of care owed to [him], which caused [his] injuries." ECF No. 60-1, p. 15, ¶ 72. In Claim 14 (gross negligence), Handy alleges that Detective Bryant and Officer Montoya's conduct exhibited "serious carelessness" and "[fell] below the ordinary standard of care that one can expect from a reasonable person." *Id.* at p. 18, ¶ 84.

Handy's negligence claims are covered by the Colorado Governmental Immunity Act ("CGIA"), COLO. REV. STAT. § 24-10-101, *et seq.* Pursuant to the CGIA:

> It is the intent of this article to cover all actions which lie in tort or could lie in tort regardless of whether that may be the

> type of action or the form of relief chosen by the claimant. *No
> public entity shall be liable for such actions except as
> provided in this article, and no public employee shall be
> liable for injuries arising out of an act or omission occurring
> during the performance of his or her duties and within the
> scope of his or her employment, unless such act or omission
> was willful and wanton, except as provided in this article*.
> Nothing in this section shall be construed to allow any action
> which lies in tort or could lie in tort regardless of whether that
> may be the type of action or the form of relief chosen by a
> claimant to be brought against a public employee except in
> compliance with the requirements of this article.

COLO. REV. STAT. 24-10-105(1) (emphasis added).  Under the CGIA's plain language, a

plaintiff asserting a negligence claim against a public employees such as Detective

Bryant and Officer Montoya, however styled, must show that the employees' acts or

omissions were willful and wanton.  Because willful and wanton conduct is an element

of gross negligence, Handy's negligence claims are one in the same. *See Hamill v.*

*Cheley Colo. Camps., Inc.*, 262 P.3d 945, 954 (10th Cir. 2011) ("Gross negligence is

willful and wanton conduct, that is, action committed recklessly, with conscious

disregard for the safety of others").  To note, the CGIA bars Handy's negligence claims

to the extent they relate to incidents surrounding his February 10, 2010, arrest. *See*

ECF No. 102, p. 11, ¶ 2 ("this Courts lacks subject matter jurisdiction over Handy's tort

claims arising out of his February 10, 2010, arrest and the subsequent second degree

attempted murder charges").  Thus, these claims may only relate to Handy's June 16,

2011, preliminary examination and the first degree extreme indifference attempted

murder charge and the protection order violation.

"To recover on a claim in negligence, the plaintiff must establish the existence of

a legal duty, breach of the duty, causation, and damage." *Perreira v. State*, 768 P.2d

1198, 1208 (Colo. 1989) (citing *Leake v. Cain*, 720 P.2d 152, 155 (Colo. 1986)).  "A

negligence claim . . . will fail if the claim is based on circumstances for which the law imposes no duty." *Id.* (citing *University of Denver v. Whitlock*, 744 P.2d 54, 56 (Colo. 1987)).  Handy neither identifies a duty owed to him by Detective Bryant and Officer Montoya nor does he offer case law supporting his assertion that a duty exists.  As such, I find that Handy fails to show the existence of duty owed to him by Detective Bryant and Officer Montoya.  As such, his negligence claims fail and they are DISMISSED WITH PREJUDICE.

### c.   Claims 12 & 13:  False Arrest and False Imprisonment

In Claim 12 (false arrest), Handy alleges that in relation to the protection violation charge, Detective Bryant subjected him to an arrest in which probable cause did not exist. ECF No. 60-1, p. 17, ¶ 80.  In Claim 13 (false imprisonment), Handy alleges that in relation to the protection violation charge, Detective Bryant subjected him to "restrain in a bounded area without justification or consent." *Id.* at ¶ 82.

Detective Bryant states that the CGIA bars these claims.  She is correct.  In my March 26, 2013, Order [ECF No. 102] I stated the scope of these claims.  Specifically, I stated, "[t]o be clear, the CGIA bars Handy's claims for false arrest and false imprisonment to the extent they related to his February [10], 2010, arrest and the second degree attempted murder charges, and Handy's August 18, 2011, arrest." ECF No. 102, p. 14, ¶ 1.  Because Handy's Colorado state law claims for false arrest and false imprisonment relate to his arrest on August 18, 2011, those claims are barred.  As such, Handy's Colorado state law claims for false arrest and false imprisonment are DISMISSED WITH PREJUDICE.

### d. Claim 15:  Intentional Infliction of Emotional Distress / Outrageous Conduct

Handy alleges that Detective Bryant and Officer Montoya's action of filing "false criminal charges" was "intentional or reckless, and extreme and outrageous" and caused him "severe emotional distress." ECF No. 60-1, p. 18, ¶ 86.

To the extent that this claim relates to Handy's February 10, 2010, arrest, the CGIA bars this claim. ECF No. 102, p. 11, ¶ 2.  To the extent that this claim relates to Detective Bryant and Officer Montoya's alleged perjurious testimony at the preliminary hearings, they are absolutely immune from any civil liability related to such testimony. *See* Sections B(1)(b) and B(2)(a) of this opinion.  Thus, Handy may only proceed with this claim as it relates to the first degree extreme indifference attempted murder charge and the protection order violation charge.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . " *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).

> [T]he level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high:  "Liability has been found only where the conduct has be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Id.* (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).  Handy fails to show that any actions taken by Detective Bryant and Officer Montoya rise to this high standard.  As such, this claim is DISMISSED WITH PREJUDICE.

### e.  Claim 19:  Defamation / Libel / Slander

Handy alleges that Detective Bryant and Officer Montoya made "false attempted murder and unlawful termination of pregnancy statements." ECF No. 60-1, p. 23, ¶ 104. Handy further alleges that such statements were "libelous and slanderous," "imputed criminal offenses," and were "unmistakably recognized as injurious." *Id.*  Handy appears to use this claim as a "catch all" claim, attempting to state that Detective Bryant and Officer Montoya's statements regarding Smith's terminated pregnancy constitute defamation, libel, and slander.  To be clear, merely alleging that a statement is "libelous and slanderous" is insufficient to state a claim for such torts.  Handy specifically states that his alleged injuries under this claim are "are set forth under the state tort defamation," and I will construe this claim as such.  Pursuant to my March 26, 2013, Order [ECF No. 102, p. 11, ¶ 2], this claim may only relate to information Handy learned during the June 16, 2011, preliminary hearing *i.e.*, the first degree extreme indifference attempted murder charge and the protection order violation.

In order to prevail on a Colorado state law claim for defamation, a plaintiff must establish:

> (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication.

*Williams v. District Court*, 866 P.2d 908, 912 n.4 (Colo. 1993) (citations omitted).  A statement is defamatory when it "holds an individual up to contempt or ridicule and causes injury or damage." *Wilson v. Meyer*, 126 P.3d 276, 279 (Colo. App. 2005) (citing *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994)).

- 22 -

Under Section B(2)(a) of this opinion, I opine that if the Supreme Court of Colorado were presented with the issue of whether witnesses testifying at a preliminary hearing are entitled to absolute immunity, the court would most likely extend its holding in *Wagner* to include witness testimony at preliminary hearings.  Thus, to the extent that this Colorado state law claim relates to Detective Bryant's testimony at the June 16, 2011, preliminary hearing, absolute immunity bars such a claim.

The only other statements that can conceivably relate to this claim are found in Detective Bryant's February 1, 2010, Supplemental Police Report [ECF No. 109-2].  In that report, Detective Bryant states that Smith's pregnancy "is no longer viable" and Smith "believes that the loss is a direct result of injuries she sustained during the incident with Handy." ECF No. 109-2, p. 9.  Detective Bryant merely reduced to writing what was told to her by Smith.  Under these circumstances, Detective Bryant's statements in her Supplemental Police Report [ECF No. 109-2] are not defamatory. Further, there is no evidence that Officer Montoya made any statements that Smith's terminated pregnancy was the result of the January 19, 2010, incident.  As such, Handy's Colorado state law defamation claim is DISMISSED WITH PREJUDICE.

## C.  City Of Sheridan's Motion For Summary Judgment [ECF No. 111]

In Claim 16, Handy alleges a § 1983 municipal liability claim against the City of Sheridan.

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or causes a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692

(1978)).  "But, under § 1983, local governments are responsible only for "their *own*

illegal acts." *Id.* (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  Local

governments "are not vicariously liable under § 1983 for their employees' actions." *Id.*

(citations omitted).

"Plaintiffs who seek to impose liability on local government's under § 1983 must

prove that 'action pursuant to official municipal policy' caused their injury." *Connick*, 131

S.Ct. at 1359 (citing *Monell*, 436 U.S. at 691).  Thus, in order for a plaintiff to prevail on

a § 1983 municipal liability claim, he must establish "(1) that a municipal employee

committed a constitutional violation, and (2) that a municipal policy or custom was the

moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty.*

*Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694).

As previously stated in this opinion, Handy has not established that either

Detective Bryant and/or Officer Montoya, who are employees of the City of Sheridan,

committed a constitutional violation.  Thus, the analysis stops here.  As such, Handy's

§ 1983 municipal liability claim against the City of Sheridan is DISMISSED WITH

PREJUDICE.

**D.   Handy's Motion To Amend Or Alter Judgment Pursuant To Fed. R. Civ. P.
        59(e) [ECF No. 177]**

Pursuant to Rule 59(e) of the FEDERAL RULES of CIVIL PROCEDURE, "[a] motion to

alter or amend judgment must be filed no later than 28 days after the entry of judgment."

Judgment has not been entered in this action and therefore the motion is premature.  As

such, the motion is DENIED.

**CONCLUSION**

After careful consideration of the matters before this Court, it is

ORDERED that Detective Bryant's Motion For Summary Judgment [ECF No. 109] is **GRANTED**, and Handy's claims asserted against Detective Bryant are **DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that Officer Montoya's Motion For Summary Judgment [ECF No. 110] is **GRANTED**, and Handy's claims asserted against Officer Montoya are **DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that the City of Sheridan's Motion For Summary Judgment [ECF No. 111] is **GRANTED**, and Handy's claim against the City of Sheridan is **DISMISSED WITH PREJUDICE**.  Because all of Handy's claims are dismissed, it is

FURTHER ORDERED that Handy's Motion To Continue And/Or Stay Proceedings In This Case And To Modify All Deadlines [ECF No. 134] is **DENIED AS MOOT**.  It is

FURTHER ORDERED that Handy's Motion To Amend Or Alter Judgment Pursuant To Fed. R. Civ. P. 59(e) [ECF No. 177] is **DENIED**.  It is

FURTHER ORDERED that Handy's Motion For Court To Order Clerk To Send Plaintiff A Copy Of The Register Of Actions [ECF No. 176] is **DENIED**.

Dated:  February 17, 2014.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge